[Civ. No. 19566.   Second Dist., Div. Two.   Sept. 25, 1953.]

Estate of DOROTHY WALKER KESSLER, Deceased. FRED WALKER et al., Appellants, v. HOWARD M. KESSLER, Respondent.

Boller, Suttner & Boller for Appellants.

Nicholas & Mack, A. F. Mack, Jr., and Max G. Kolliner for Respondent.

FOX, J.—Mrs. Dorothy Walker Kessler died in Arcadia, California, in April, 1946. She was survived by her daughter, Karen, then aged 3, and by her husband, Howard M. Kessler. By her will Mrs. Kessler provided for a trust for the use and benefit of her daughter, with Mr. and Mrs. Fred Walker, parents of Mrs. Kessler, as trustees. The will was admitted to probate and in due course the trust was established. In August, 1952, the value of the corpus of the trust was $66,000 and the average annual income was $2,000.

By the terms of the will and the decree of the probate court the trustees were directed ". . . to use the income from the

Trust for the care, maintenance, care and education of Karen Dee Kessler, and the said Trustees in their sole discretion may use as much of the principal for the purpose of caring for said Karen Dee Kessler as the said Trustees shall deem proper and advisable.'' The trust is to terminate when Karen reaches 30 years of age, and the trust estate is to be turned over to her. If she dies before then, distribution is to be to her issue. In the event she should leave no issue the trust funds go to her father, the respondent.

Since the establishment of the trust in January, 1948, only a little over $1,000 has been paid for the use and benefit of the child. This was between July, 1948, and July, 1949, when she was in the care of a Mrs. Rosebrock and the trustees were permitted to see her. Payments ceased, however, when the father took Karen to Cleveland, Ohio. Thereafter the trustees saw the beneficiary only once, when they journeyed to Cleveland for that purpose. At the time of the hearing she had been returned to California but the trustees had not been so informed. She resides with the respondent, her father, his mother, and the latter's husband, in a six-room single family residence.

In July, 1952, the trustees filed their petition alleging, among other things, that Mr. Kessler was interfering with their carrying out the trust by his refusal: (1) to divulge the whereabouts of the child; (2) to permit the trustees to see or visit the child to ascertain her welfare; and (3) to permit any funds to be expended for her support and benefit. The trustees sought instructions and requested the court to exercise its powers toward the fulfillment of the trust by ordering Mr. Kessler, among other things, to disclose the address of the child and to permit reasonable visitation by them ''as trustees, within the scope of their duties.'' In his response Mr. Kessler revealed that Karen was living in his home and that it was agreeable to him that the trustees make payments from the trust for Karen's benefit ''if such payments are made on a mutually satisfactory basis,'' but he would not consent to their seeing her.

After a trial the court found: that ''the beneficiary would not be harmed by receiving visits from petitioners; that there would be nothing detrimental to the beneficiary in any association of the beneficiary with petitioners''; that the father ''objects to any visit or association by the petitioners and said beneficiary'' and ''still refuses to permit petitioners to see,

visit or talk with the beneficiary''; that ''payments out of said trust fund for the benefit of beneficiary, both as income or principal, are to be made only in the sole discretion of petitioners''; that visiting, seeing and talking with the beneficiary is necessary in order to permit petitioners properly to administer their trust and properly to exercise their discretion.'' The court then instructed the trustees ''not to make any payments from income or principal of trust for benefit of beneficiary unless in their sole discretion such payments are necessary'' and not to visit the child as long as the father objects. The court concluded that it ''is without authority to grant the petitioners the right to visit such beneficiary over the objection of the father.'' The trustees appeal from this decision. In our opinion it is not sound.

It must be borne in mind at the outset that this is not a custody or visitation case and not one involving an abuse of discretion by the trial court. ■ The fact that the trustees are the grandparents of the beneficiary should not militate against the right to exercise their duties under the trust. (See *Benner* v. *Benner,* 113 Cal.App.2d 531 [248 P.2d 425]; *Smith* v. *Smith,* 85 Cal.App.2d 428, 433-434 [193 P.2d 56].)

■ In dealing with matters involving children the primary concern of the court is their welfare. It is always solicitous to prevent any association or situation which would prove harmful. ■ The trial court has answered this phase of our problem by its finding that the child will not be harmed by visits from petitioners and that there would be nothing detrimental to her in any association with them. On the other hand, petitioners have a duty to perform which they cannot properly perform without visiting, seeing and talking with the child. Additionally, the proper performance of that duty will undoubtedly be beneficial to the child, for it may well result in her having training and development opportunities which she would not otherwise have. In present day society, such things cost money—particularly in the case of training along special lines or for a college education. These and many other things that might be mentioned are important in the future happiness and success of this child, and in her achieving recognition and standing with her friends and in the community. The money is available—made so by the planning of a departed mother. No persuasive reason appears why it should not be used for the benefit of this child. The objection of the father to the trustees' seeing the child

loses its potency and appears to be arbitrary in view of the court's findings. (See *Smith* v. *Smith, supra,* p. 434.)

■ The suggestion is made that the court's order will result in substantial accumulations in the trust and accord Karen ''greater and perhaps more timely benefits'' when the corpus is delivered to her at 30 years of age. What Karen needs during these formative years is not the prospect of an enlarged estate when she is 30 but increased opportunity for education, training and development which will prepare her to achieve a successful life as well as to earn a living and to take her place as a responsible and capable member of society. The judicious investment of some or perhaps all the income from this trust, and even, possibly, some of its corpus, might reasonably be calculated to be of a greater benefit to her both in the immediate future and in the long run than the added accumulations some 20 years hence, which she might not live to enjoy. Of course if Karen should die before reaching 30 without leaving issue, respondent would come into the personal enjoyment of the trust estate.

Counsel have cited *Odell* v. *Lutz,* 78 Cal.App.2d 104 [177 P.2d 628]. Admittedly, however, it is not determinative of this case. There, grandparents sought an order granting them the right of visitation, which was denied. They also contended that as trustees they had an equivalent right. This the court denied because there were no payments of principal or interest to be made to the beneficiary until the child attained the age of 25 years. The court properly pointed out there that while the appellants had the management and control of the trust estate, the right to visit the beneficiary was not necessary for the administration of such an estate.

■ Here we have a trust, which has always enjoyed the solicitude of equity. Courts of equity have administered trusts in myriads of situations. ■ This trust is for a laudable purpose; the trustees are anxious to carry out that purpose but are virtually helpless unless they can see and talk with the beneficiary and thus have some basis for determining what expenditures would, in their opinion, be for her benefit; the beneficiary would undoubtedly profit from the judicious exercise of their authority; no detrimental or harmful effect would flow from their seeing and talking with the child, and the father's parental custody would not be disturbed. Under such circumstances a court of equity can and should take jurisdiction and assist in the carrying out of the trust.

■ Finally, respondent says that ". . . even though it may be necessary for the administration of the trust for the trustees to visit the beneficiary it does not follow that this must be done by the trustees personally. Under the express provision of the decree establishing the trust, they may exercise the right of visitation through an agent of their selection to whom the respondent would not object." This seems to concede the necessity of the trustees having unbiased information relative to the beneficiary and as to what would be for her benefit. However, since payments out of the trust "are to be made only in the sole discretion of petitioners" they are not required to rely on hearsay information and the opinions of others.

■ In support of his argument that under the express provision of the decree establishing the trust, the trustees may exercise the right of visitation through an agent, the respondent points to the following paragraph: "In the event that the Trustees herein fail to qualify as Trustees or for any reason whatsoever are unable to act, they are hereby empowered to appoint someone in their place and stead to carry out the term of this trust." The purpose of this provision is not to authorize the trustees to delegate the exercise of their discretion to agents but rather to provide a method (in addition to that provided by Prob. Code, § 1126), for appointing trustees in the event those named either failed to qualify or for any reason become unable to serve.

There is stricken from the order instructing testamentary trustees (signed and filed Nov. 20, 1952) paragraph III thereof, ordering the trustees "not to visit or care for said beneficiary as long as Father of beneficiary objects" and also paragraph IV, which reads: "The court is without authority to grant the petitioners the right to visit such beneficiary over the objection of the father."

The order is reversed with directions to the trial court to fix the times, places, and circumstances under which the trustees may see, visit and talk with the beneficiary, Karen Dee Kessler.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied October 14, 1953, and respondent's petition for a hearing by the Supreme Court was denied November 19, 1953.